NORTHERN METROPOLITAN RESIDENTIAL HEALTH CARE FACILITY, INC., Appellant, v LEDRI REALTY ASSOCIATES INC., Respondent.

Third Department, April 9, 1992

134

**APPEARANCES OF COUNSEL**

*Donald Tirschwell* for appellant.

*Bizar Shustak Martin & Schneider (Irving Bizar* of counsel), for respondent.

## OPINION OF THE COURT

MAHONEY, J.

In 1972, Maple Leaf Construction Corporation (hereinafter the mortgagor) was the owner of certain unimproved real property located in the Town of Ramapo, Rockland County. Pursuant to a lease agreement with STB Investors Ltd. (hereinafter STB), the mortgagor agreed to construct a 120-bed nursing home on the property which STB was to operate. The lease term was for 20 years with an option to renew for two additional 20-year periods. Following a series of subleases and assignments, in 1981 the then-current tenant assigned the lease to plaintiff. At the time of assignment, plaintiff and the mortgagor entered into two separate agreements modifying certain of the original lease terms. Both agreements were executed on the same day. The first agreement contained modifications required by the State Department of Health and, among other things, eliminated the cost of living increase provisions contained in the original lease (hereinafter the first modification). The second agreement, executed shortly after the first was written in Hebrew, executed before a Rabbinical court, and among other things, specifically relinquished the two 20-year renewal options (hereinafter the second modification).

Shortly thereafter Ulster Savings Bank (hereinafter the Bank), which held two mortgages on the property as security for moneys lent to the mortgagor in connection with construction of the nursing home, commenced foreclosure proceedings. During foreclosure proceedings, an issue arose concerning whether the property was to be sold subject to plaintiff's lease.[1] While the mortgagor maintained that the property should be sold free of the lease because the two 20-year renewal options would adversely affect the property's marketability (and thus presumably increase the deficiency judgment for which the mortgagor would be responsible),[2] plaintiff sought to have the sale made subject to its lease. Ultimately

---

1. The lease contained a clause subordinating the lessee's interest to the mortgagee.

2. It is unclear why this argument was advanced since the renewal option had previously been eliminated by operation of the second modification.

plaintiff entered into a stipulation with the Bank which, in return for plaintiff's agreement to post a letter of credit for the amount due and owing to the Bank plus incidental expenses, the Bank agreed to sell the property at the foreclosure sale subject to the lease. In the stipulation, to which neither the mortgagor nor defendant was a party, the lease was defined to include *only* the original lease and the first modification. Conveniently omitted was any mention in the stipulation regarding the second modification. The Bank incorporated the terms of the stipulation into the judgment of foreclosure. Defendant purchased the property at the foreclosure sale.

At the time of defendant's purchase, the initial 20-year lease term was drawing to a close and plaintiff notified defendant of its intent to renew for an additional 20-year term. Defendant rejected the notice asserting breach of the lease by plaintiff, prompting plaintiff to commence the instant action seeking a declaration that it was entitled to renew the lease. In its answer, defendant asserted as an affirmative defense that the second modification eliminated the renewal option. Plaintiff asserted that the second modification had effectively been eliminated by virtue of the fact that it was not incorporated in the stipulation and not contained in the judgment of foreclosure. The parties cross-moved for summary judgment. Supreme Court awarded summary judgment to defendant on its affirmative defense and adhered to its determination upon reargument. Plaintiff appeals.

Essentially, plaintiff argues that the stipulation, because it omitted any reference to the second modification, operated to remove that clause from the lease. For plaintiff to succeed on this theory, it must establish that the stipulation constituted a further modification of the already twice modified lease. We think it does not. Even assuming, arguendo, that the Bank was an agent or assignee of the mortgagor and thus had authority to modify the lease terms (a determination which cannot be made on this record), the evidence presented fails to establish that the omission was intended as a modification. It is axiomatic that a modification can only occur by *mutual assent;* it cannot be presumed or implied (1 Rasch, New York Landlord and Tenant—Summary Proceedings § 6:22, at 275 [3d ed]). Here, the record is devoid of even any hint that omission of the second modification was the result of a conscious, bargained-for agreement on behalf of the Bank. Rather, it appears that at the time of the stipulation, the

Bank was laboring under the misapprehension that the two 20-year renewal options were still valid and enforceable. Whether plaintiff created this misapprehension or not, it is clear that it did nothing to set the record straight. Instead, notwithstanding that it was a party to the second modification, it all too conveniently permitted omission of any reference to it in the stipulation and thus perpetuated the misapprehension. In our view, a change which comes about in this manner, i.e., through a surreptitious adjustment of contract terms to comport with the other's misapprehension, as apparently was done here, hardly satisfies the mutual assent requirements necessary to effect a valid lease modification.

■ Nor is plaintiff's failure to comply with the requisites for a valid modification somehow rendered academic by defendant's subsequent purchase of the property. While it is true that in some instances a bona fide purchaser may take free from certain lease terms of which he or she had no knowledge at the time of purchase *(cf., Naccarato v Van Buren,* 65 AD2d 900), there is no indication that defendant lacked notice in this case. In any event, this principle is designed to protect the unwitting purchaser and cannot be invoked by plaintiff, who was *an actual party to* the second modification.

■ We also reject plaintiff's contention that defendant is barred by the doctrine of judicial estoppel from denying the existence of an option to renew. This argument is premised upon the fact that in the earlier foreclosure proceedings, *the mortgagor* (not defendant) effectively admitted the existence of a renewal option in an effort to persuade the foreclosure court that the premises should be sold free and clear of the lease, arguing that the options would impact negatively on its marketability and value. Even assuming, arguendo, that defendant and the mortgagor are to be treated as one for purposes of application of this doctrine inasmuch as both share some common stockholders, a necessary condition for successful interposition of the doctrine is that the party secure judgment in its favor by adopting the position on which it is now taking the opposite stand *(see, Hinman, Straub, Pigors & Manning v Broder,* 124 AD2d 392). Because the mortgagor's position was rejected by the foreclosure court, judicial estoppel does not lie to preclude defendant's position here.

MIKOLL, J. P., MERCURE and CREW III, JJ., concur.

Ordered that the order is affirmed, with costs.